## CRAIG against WARD.

ALBANY,
August, 1812.

CRAIG
v.
WARD.

THIS was an action of *trespass de bonis asportatis*, for seizing and carrying away a *coachee* and 3 *horses*, the property of the plaintiff. The claim as to the *horses* was, however, afterwards, abandoned. The cause was tried at the *New-York* sittings, in *November*, 1811, before Mr. Justice *Van Ness*.

The plaintiff, in *May*, 1809, purchased of one *Gordon*, as agent of the estate of *Patrick Shay*, deceased, divers horses, carriages, &c. and a lease of certain stables in *Courtlandt-street*, forming what was called the livery-stable establishment, for which a bill of sale was given by the executors of *Shay*. The plaintiff paid 400 dollars in cash, and gave three promissory notes for 400 dollars each.

It was proved, that the plaintiff bought the *coachee*, or carriage, in question, of *Burtis & Woodward*, coachmakers, in *June*, 1809, for 90 dollars, which was afterwards put into the possession of *Jacob Crissy*, and was considered as part of the livery-stable establishment. The coachee and horses, which were established as a stage to run from *Pawles Hook* to *Brighton*, were attached at *Newark*, in *New-Jersey*, in *August*, 1809, at the suit of *Ward*, for a debt due to him from *Crissy*, and sold. The plaintiff put in a claim of property, which was tried before a sheriff's jury, in *New-Jersey*, who found the property to be in *Crissy*.

From the evidence on the part of the defendant, it appeared that *Crissy* had been in possession of the livery-stable establishment from the time it was first purchased by *Craig*, who had said that *Crissy* was to pay the notes given for the purchase, the rent and wages of the persons employed, &c.; that a *sign* was put up on which was written "*Crissy's Livery Stable;*" and a notice was published in the *gazette*, by which *Crissy* informed the public, that he had established a regular stage between *New-York* and *Brighton*, &c. and a similar advertisement was posted up in *New-Jersey ;* and *Craig* admitted that he had drawn the advertisements. When the carriage and horses were seized under the attachment, the driver, at first, said they belonged to *Crissy*, but, afterwards, said they were the property of the plaintiff. The coachman was employed and paid by *Crissy*, and he testified that *Crissy* had the whole management of the establishment, which was conducted

The mere possession of a personal chattel, with the consent of the true owner, will not render the chattel liable to the debts or disposition of the reputed owner; but there must be a fraudulent or deceptive purpose in view, or implied from the special circumstances of the case. Where A. purchased a *livery stable*, &c. and delivered the possession to B. who carried on the business in his own name, but was to pay over all the moneys received to B. who was to allow B. one third of the net proceeds, or clear profits, and A. afterwards bo't a *coach* which he delivered to B. and which, afterwards, while in the possession of B. was taken in execution by a creditor of B. it was held that the property in the coach did not pass to B. unless his possession of it was fraudulent, and intended for colourable purposes, it was not liable to his creditors.

in the name of *Crissy*, who paid the expenses; and that when the plaintiff wanted a horse, or carriage, he applied to *Crissy* for them.

The plaintiff gave in evidence an agreement made between him and *Crissy*, dated the 1st of *May*, 1809, which recited that *Craig* had that day purchased the livery-stable establishment of the executors of *Shay*, with the carriages, horses, &c. and taken a lease of the ground and stable, &c. " with the intent, and for the purpose, of carrying on the business, &c. through the agency of *Jacob Crissy*, and had intrusted the same to the care and management of the said *Jacob Crissy*." *Crissy* then covenanted with *Craig* to take the care and management of the said carriages, horses, gigs, &c. and to enter into the occupation of the said stables, &c. and to carry on the said business in all its branches, to the best advantage, &c. for and on account of *Craig*, for and during the term of three years from the date of the agreement, and to account to *Craig*, monthly, during the term, for all moneys received, &c.; and *Craig* covenanted, that he would, monthly, and as often as he should receive from *Crissy* any sum or sums of money arising from the business, after deducting all expenses, rent and charges, incident to the establishment, pay to *Crissy* one *third* of the *net proceeds*, or *profits*, received, &c.; which one third of the net proceeds, or profits, was to go as a full compensation, or consideration, for *Crissy's* services, care and management of the stables, &c. during the said term of three years; and *Crissy* covenanted to keep regular books of accounts, which *Craig* was to have leave, at all times, to inspect.

The counsel for the defendant moved for a nonsuit, on the ground, that in whomsoever the *property* in the carriage in question was, the *possession* of it, for the term mentioned in the agreement, was in *Crissy*, and that the plaintiff could not maintain the *trespass*. The judge was of that opinion, as it respected the horses; but as the carriage was purchased subsequent to the agreement, he thought that if *Crissy*, under all the circumstances of the case, was not to be deemed the *owner*, and the property, therefore, liable to pay his debt, he might be considered as the agent of *Craig*, who would, in judgment of law, be deemed to have the possession. The plaintiff's counsel contended that, even if the acts of *Craig*, and the *ostensible ownership* of *Crissy*, might have subjected the property to the creditors of *Crissy*, whose

ALBANY,
August, 1812.

CRAIG
v.
WARD.

debts accrued subsequent to his possession; yet the rule could not apply as to debts existing prior to such possession; as the creditors could not then be deemed to have trusted *Crissy* on the faith of the property. The judge expressed his doubts as to the correctness of this distinction; and charged the jury that if they believed that *Crissy* had such an ostensible ownership as would render the property liable to debts of creditors subsequently accrued, it would be liable to all.

The jury found a verdict for the plaintiff, for 102 dollars and 66 cents.

A motion was made to set aside the verdict, and for a new trial.

*Slosson*, for the defendant. To maintain trespass for goods, the plaintiff must have the actual or constructive possession, at the time of the alleged trespass. If he has not the actual possession, he must have a right to reduce them to his possession when he pleases.* By the agreement, *Crissy* was to have the possession for three years, so that the plaintiff could not claim it before the expiration of that time.

> * *Putnam v.*
> *Wiley,* 8 *Johns.*
> *Rep.* 432. 4
> *Term Rep.*
> 489. 7 *Term*
> *Rep.* 9.

The carriage, it is true, was purchased after the agreement, but it was turned into the establishment, of which *Crissy* was to have the sole management. It was as much in his possession as any other article belonging to the establishment. Though the carriage did not pass by the agreement, yet that agreement shows the intention of the parties as to the property.

Again, the advertisement of *Crissy*, written by the plaintiff, shows it to be his property. The acts and declarations of the plaintiff recognise it as the property of *Crissy*, and he cannot, now, be permitted to gainsay those acts, and declarations, after *Crissy* may have obtained credit on the faith of the ownership.

*T. A. Emmet*, contra. At the time of the purchase by *Craig*, and the agreement with *Crissy*, the carriage was not in the possession of either party, for it was not then purchased. This case is different from that of *Putnam* v. *Wiley*, or *Ward* v. *Macauley*. It is, in fact, an attempt to extend the law of partnership to a most dangerous length. For there are very many useful public works and manufactories, on a similar establishment, carried on by confidential agents, who are to have a *per centage*, or portion, of the *net profits*, as a compensation for their services. The agreement

ALBANY,
August, 1812.

CRAIG
v.
WARD.

between *Craig* and *Crissy* contains no words of demise. It de-
clares that the plaintiff had purchased the property, and had *in-
trusted Crissy* with the care and management of it.    All the co-
venants are on the part of *Crissy*.    The plaintiff merely promises
to pay him his wages.    *Crissy* was a mere servant, or agent, who
was to receive a portion of the net profits, as a compensation for
his services.    *Crissy* had no *jus disponendi* in regard to the
property.    If *Craig* had been dissatisfied with the conduct of
*Crissy*, and had turned him out of possession, the latter could not
have maintained any possessory action against the former.

    As to the point of *visible ownership* ; the cases have gone no
further than to say, that where a person, trusting to the visible
ownership, has given a credit, he may set off the debt against the
claim by the real owner, or principal;* but none of them go so
far as to allow an old and antecedent debt to be set off by the per-
son claiming to be the real owner.    The doctrine of partnership
is not applicable to the present case : and if *Crissy* could have no
right of action against *Craig*, if dispossessed by him, the creditors
of *Crissy* could have no right to take the property in execution.

*georgemargin*
* *George* v.
*Clagett, 7 T.
Rep. 359. Ra-
bone v. Wil-
liams, ib. note
(a). Ross v.
Dey, ib. note
(c). 2 Esp.
N. P. Cases,
469.*

    *D. B. Ogden*, in reply, observed, that the advertisements,
drawn up by the plaintiff, as well as his declarations, showed, con-
clusively, that the livery-stable establishment belonged to *Crissy*,
and that this carriage was delivered to him to form a part of that
establishment.

    *Possession* is the only *indicium* of property in personal chat-
tels ; and *Crissy* having advertised the property in his own name,
with the assent of the plaintiff, the plaintiff cannot now claim to
be the owner.    The distinction between debts contracted before
or after the visible ownership, is not to be found in the books.
The case of *Ross* v. *Dey*† supports the principle for which we
contend.    After the plaintiff, by his conduct, has led the defend-
ant to believe that *Crissy* was the real owner, he cannot pull
off the mask, and claim the property as his own.

† 7 *TermRep.*
361. *note.*

    Again, *Crissy* was to have *one third* of the *profits*.    Now a
participation in the profits renders the person a partner, and if he
was a partner, he had an interest which could be taken in execu-
tion.

    Again, if *Crissy* had an interest in the property, it was liable to
be attached in *New-Jersey*, and the right of property being *there*
decided, the present action cannot be brought for the same pro-
perty in this state.

*Per Curiam.* The only question arising on this case is, whe-ther the coachee, purchased by the plaintiff, subsequent to the articles of agreement between him and *Crissy*, and delivered into the possession of *Crissy*, was liable, as the property of *Crissy*, for his debts. The carriage was not embraced by the agreement, and might have been recalled by the plaintiff at any time. As to this article, *Crissy* was the mere agent or servant of the plaintiff. The property in the coachee did not, therefore, pass as between them; and unless the possession was fraudulent, and intended for coloura-ble purposes, the coachee was not liable to the creditors of *Crissy*. The bankrupt law of 21 *Jac.* I. c. 19. s. 11. considers chattels so possessed by the bankrupt, and used by him as reputed owner, with the consent of the true owner, as liable to pay the debts of the bankrupt. But independent of any statute provision, the mere possession of a chattel will not, of itself, render the chattel liable to the debts or disposition of the possessor. There must be a fraudulent or deceptive purpose in view, or implied, under the special circumstances of the case. The jury by their verdict in this case, have negatived the suggestion of fraud; and the motion for a new trial ought to be denied.

Motion denied.